**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Wayne Hiatt, | No.  CV-23-00552-PHX-SPL |
| Plaintiff, | |
| vs. | **ORDER** |
| Sun City Festival Community Association Incorporated, | |
| Defendant. | |

Before the Court is Wayne Hiatt's ("Plaintiff") Motion for Preliminary Injunction. (Doc. 87). Having reviewed the parties' briefing (Docs. 97, 104), and having held an evidentiary hearing on September 25 and September 26, 2024, the Court now rules as follows.

## I.    BACKGROUND

On March 31, 2023, Plaintiff filed a two-count Complaint against Defendant Sun City Festival Community Association Incorporated ("Defendant" or the "Association") alleging discrimination under the Fair Housing Act ("FHA") 42 U.S.C. §§ 3601, et seq., and the Arizona Fair Housing Act ("AZFHA"), A.R.S. § 41-1491.19(B). (Doc. 1). Plaintiff alleges that he is a disabled veteran who suffers from post-traumatic stress disorder ("PTSD"), constant anxiety, and panic attacks. (Doc. 1 at ¶ 8; Doc. 87 at 3). Plaintiff alleges that woodworking helps reduce the symptoms associated with his disability. (Doc. 1 at ¶ 10; Doc. 87 at 3). Plaintiff further alleges that his garage is the only place where he can engage in woodwork and achieve therapeutic benefits to his PTSD. (Doc. 1 at ¶ 10; Doc.

87 at 3). The Association's Declaration of Covenants, Conditions, and Restrictions ("CC&Rs") prohibits open garage doors and further provides that "[g]arage doors shall remain closed at all times except when entering or exiting the garage." (Doc. 7 at ¶ 6; Doc. 97 at 16; Doc. 50-1 at 375, § 3(c)). Plaintiff, however, claims he needs to keep his garage door open while woodworking inside of his garage to avoid triggering his PTSD. (Doc. 1 at ¶ 10; Doc. 87 at 4).

In October 2022, a neighbor complained to the Association about Plaintiff leaving his garage door open, and the Association sent Plaintiff a notice of violation instructing him to keep the garage door closed. (Doc. 87 at 3–4). In November 2022, Plaintiff sent the Association a request for accommodation under the FHA to keep his garage door open while he is woodworking. (Doc. 1 at ¶ 11). In January 2023, the Association, through its legal counsel, denied Plaintiff's accommodation request. (Doc. 1 at ¶¶ 16–17, Doc. 1-2 at 2–3). Plaintiff filed this lawsuit shortly after. (Doc. 1). Plaintiff filed the instant Motion for a Preliminary Injunction on August 29, 2024, nearly 17 months after filing the initial Complaint. (Doc. 87). Plaintiff's Motion seeks an injunction preventing Defendant from enforcing its restriction against open garage doors against Plaintiff. (*Id*. at 1). On September 25 and September 26, 2024, the Court held an evidentiary hearing on the Motion and took the matter under advisement.

## II.    LEGAL STANDARD

A party seeking injunctive relief must show that: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of injunctive relief; (3) the balance of equities tips in its favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "The Ninth Circuit weighs these factors on a sliding scale, such that where there are only 'serious questions going to the merits'— that is, less than a 'likelihood of success' on the merits—a preliminary injunction may still issue so long as 'the balance of hardships tips *sharply* in the plaintiff's favor' and the other two factors are satisfied." *Short v. Brown*, 893 F.3d 671, 675 (9th Cir. 2018) (citing *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)).

"A preliminary injunction can take two forms. A prohibitory injunction prohibits a party from taking action and preserves the status quo pending a determination of the action on the merits." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878 (9th Cir. 2009) (cleaned up) (citation omitted). In contrast, "[a] mandatory injunction orders a responsible party to take action." *Id*. at 879 (internal quotation marks omitted) (citation omitted). Thus, "[a] mandatory injunction goes well beyond simply maintaining the status quo pendente lite and is particularly disfavored. In general, mandatory injunctions are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages." *Id*. (internal citation and quotation marks omitted).

## III.    DISCUSSION

### A.  Scope of Relief Sought

As a threshold issue, Defendant argues that Plaintiff seeks relief beyond the scope of Plaintiff's original Complaint in requesting an exception to the garage door rule for activities other than solely woodworking, and that Plaintiff is therefore not entitled to injunctive relief. (Doc. 97 at 8–9). The Ninth Circuit has recognized that "there must be a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015). "This requires a sufficient nexus between the claims raised in a motion for injunctive relief and the claims set forth in the underlying complaint itself." *Id*. A sufficient nexus exists when the preliminary injunction would grant relief of the same nature as the complaint. *Id.*

While Plaintiff's Complaint certainly primarily focused on woodworking, his accommodation request to Defendant also noted that he utilizes the garage as a safe place to be social without being overwhelmed. (Doc. 1 at 3, ¶ 13). Indeed, this Court has previously considered and accepted that Plaintiff seeks an accommodation for various therapeutic activities—including woodworking, drawing, and watching TV—that he enjoys from the comfort of his garage. (Doc. 82 at 6). Moreover, the relief Plaintiff seeks

for woodworking in his garage is the same relief Plaintiff seeks for engaging in other therapeutic activities, such as drawing: to be allowed to keep his garage door open while engaging in such activities. Because the preliminary injunction would grant "relief of the same character as that which may be granted finally," the relief sought has the requisite clear nexus to the underlying complaint. *See Pac. Radiation Oncology, LLC*, 810 F.3d at 636 (citing *De Beers Consol. Mines v. United States*, 325 U.S. 212, 220 (1945). Therefore, this Court has authority to provide injunctive relief.

### B. Likelihood of Success on the Merits

To meet this factor, Plaintiff need only show a likelihood of success on the merits—or serious questions—as to one of their claims for relief. Here, Plaintiff asserts two claims for relief: a violation of the Federal Fair Housing Act and a violation of the Arizona Fair Housing Act. Under the FHA, it is unlawful to "discriminate against any person . . . in the provision of services or facilities in connection with [his] dwelling, because of a handicap." 42 U.S.C. § 3604(f)(2). Discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a disabled] person equal opportunity to use and enjoy a dwelling . . . ." 42 U.S.C. § 3604(f)(3)(B); 24 C.F.R. § 100.204. Arizona courts have noted that the AZFHA is "virtually identical" to the FHA. *Canady v. Prescott Canyon Ests. Homeowners Ass'n*, 60 P.3d 231, 233 n.3 (Ariz. Ct. App. 2002).

To show that a defendant has violated the FHA, a plaintiff must prove all of the following elements: (1) that the plaintiff is handicapped within the meaning of 42 U.S.C. § 3602(h); (2) that the defendant knew or should reasonably be expected to know of the handicap; (3) that accommodation of the handicap may be necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling; (4) that the accommodation is reasonable; and (5) that defendant refused to make the requested accommodation. *Dubois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2006); *see* 42 U.S.C. § 3604(f)(3)(B). "The reasonable accommodation inquiry is highly fact-specific, requiring case-by-case determination." *United States v. Cal.*

*Mobile Home Park Mgmt. Co*., 107 F.3d 1374, 1380 (9th Cir. 1997) (citation omitted).

Defendant primarily disputes whether Plaintiff's requested accommodations are necessary to allow him to use and enjoy his home. (Doc. 97 at 4–5). Defendant also argues in its Response that Plaintiff is requesting an accommodation for claustrophobia, which is the trigger for Plaintiff's PTSD and is not the specific disability for which he seeks an accommodation. (*Id.* at 3). However, after reviewing the record, it is clearly established that Plaintiff has PTSD, that Defendant knew of his condition, and that Defendant refused to meet Plaintiff's requested accommodation. (*See generally* Doc. 67; Doc. 68 at ¶¶ 2, 14, 21; Doc. 50 at ¶¶ 2, 14, 21). Indeed, this Court recognized in a September 19, 2024 Order determining the scope of the Preliminary Injunction hearing that these three elements (plaintiff's handicap, defendant's knowledge of the handicap, and defendant's refusal to accommodate) were conceded by the parties. (Doc. 100 at 2).

Additionally, this Court settled the "reasonableness" element in its August 13, 2024 Order denying Plaintiff's Motion for Partial Summary Judgment. (Doc. 82 at 5). Under the FHA, accommodations are reasonable if they do not impose a "fundamental alteration in the nature of the program" or "undue financial or administrative burdens." *Giebeler v. M & B Assocs.*, 343 F.3d 1143, 1157 (9th Cir. 2003) (citation omitted). Defendant conceded that Plaintiff's accommodation does not impose any financial or administrative burdens. (Doc. 67 at 16 n.1). Instead, Defendant has argued that Plaintiff's woodworking activities could impose a noise impact that could fundamentally alter the Association's community. (*Id*. at 16). In its August 13, 2024 Order, the Court found that because Plaintiff seeks an accommodation for other therapeutic activities in his garage that do not have a noise impact, such as painting, Defendant's general noise concerns do not rebut Plaintiff's claims that allowing him to keep his garage door open is a reasonable accommodation. (Doc. 82 at 5). Thus, the only element that remains unresolved is whether the accommodation is necessary under the FHA.

///

///

### i.      Necessity of Plaintiff's Requested Accommodation

"To prove that an accommodation is necessary, '[p]laintiffs must show that, but for the accommodation, they likely will be denied an equal opportunity to enjoy the housing of their choice.'" *Giebeler*, 343 F.3d at 1155 (alteration in original) (citation omitted); *see Cal. Mobile Home Park Mgmt. Co.*, 107 F.3d at 1381 ("Without a causal link between defendants' policy and plaintiff's injury, there can be no obligation on the part of defendants to make a reasonable accommodation."). Courts in this District have utilized a Seventh Circuit standard in assessing necessity, which considers whether the accommodation "will affirmatively enhance a disabled plaintiff's quality of life by ameliorating the effects of the disability." *Dadian v. Vill. of Wilmette*, 269 F.3d 831, 838 (7th Cir. 2001) (citation omitted); *see also Sw. Fair Hous. Council v. WG Chandler Villas SH LLC*, No. CV-19-00178-TUC-RM, 2023 WL 5158889, at *7 (D. Ariz. Feb. 24, 2023) (citing *Dadian*, 269 F.3d at 838); *Ariz. Recovery Hous. Ass'n v. Ariz. Dep't of Health Servs.*, 462 F. Supp. 3d 990, 1003 (D. Ariz. 2020) (citing *Dadian*, 269 F.3d at 838).

Plaintiff argues that the requested accommodation is necessary because without the ability to woodwork in his garage, Plaintiff does not have an equal opportunity to enjoy his housing. (Doc. 87 at 6). According to Plaintiff, the only other coping mechanism that has provided the same level of therapeutic benefits is scuba diving. (*Id.* at 7). Plaintiff took a five-month trip in 2023 to Bali, Indonesia, to scuba dive and repair his mental health, but this therapeutic method is not a long-term solution to his PTSD as he lives in Sun City, Arizona. (*Id.* at 3, 7; Doc. 104 at 6). Plaintiff also indicated that he began exploring other therapeutic options "before he realized how beneficial woodworking in his garage was to his efforts." (Doc. 87 at 8). Plaintiff's family healthcare provider, Nurse Practitioner Sarah Sonchik ("NP Sonchik"), signed off on Plaintiff's accommodation request form, which included a checked box that the requested accommodation was necessary. (Doc. 50-1 at 21–22). NP Sonchik's internal notes stated that Plaintiff "enjoys wood working" and that it has a "mental benefit to him." (Doc. 97 at 4). Plaintiff has not provided additional documentary evidence, such as a note from his psychologist Dr. Chokra, demonstrating

that the accommodation is necessary.

Defendant argues that the accommodation is unnecessary because there is a woodshop in the community Plaintiff can use and because Plaintiff utilizes other therapeutic methods to cope with his PTSD, including medications, breathing exercises, and traveling to scuba dive. (Doc. 97 at 5). However, Plaintiff countered at the Preliminary Injunction hearing that the community woodshop is not an appropriate alternative, as working around others does not mitigate his symptoms and he cannot always get to the community shop quickly when he feels an episode arising. (Docs. 117 at 15–16).

As this Court recognized in its August 13, 2024 Order, this element of Plaintiff's FHA claim is highly contested. (Doc. 82 at 4). Plaintiff has attested that the therapeutic benefits of woodworking in his garage ameliorate the effects of his PTSD symptoms and enhance his quality of life. (Doc. 87 at 6–7). However, a question still exists as to whether "but for" being allowed to leave his garage door open while woodworking inside, Plaintiff will be denied an equal opportunity to enjoy his housing. In other cases granting relief for similar FHA claims, plaintiffs typically provided a greater showing of evidence on necessity, *see Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, 765 F.3d 1277, 1289 (11th Cir. 2014) (where the plaintiff introduced multiple letters from treating psychiatrist to support history of PTSD and the curative impact of his requested accommodation), or a clearer link between their disability, the defendant's policy, and the relief sought. *See Holland v. Related Cos., Inc.*, No. C 15-03220 JSW, 2015 WL 4498776, at *2 (N.D. Cal. July 23, 2015) (finding the plaintiff's requested accommodation of moving to another apartment unit away from loud construction noise that triggered his PTSD necessary). Courts have declined to find this factor satisfied when healthcare providers opine that a requested accommodation is merely suitable or sufficient, without offering an opinion about what accommodation is necessary. *See Norman v. Rancho del Lago Cmty. Ass'n*, No. 19-CV-00486-TUC-JAS-LCK, 2021 WL 5167305, at *5 (D. Ariz. Aug. 5, 2021). To that end, courts have refused to find an accommodation necessary when plaintiffs provide only "unsupported averments" and "slight anecdotal evidence" of the requested

accommodation's necessity. *Prindable v. Ass'n of Apartment Owners of 2987 Kalakaua*, 304 F. Supp. 2d 1245, 1257 (D. Haw. 2003), *aff'd sub nom. Dubois*, 453 F.3d 1175. Additionally, courts are disinclined to find the necessity element satisfied when the requested accommodation provides a benefit unrelated to ameliorating the effects of a handicap or when the plaintiff cannot show that an alternative accommodation would not accommodate his disability equally as well. *Norman*, 2021 WL 5167305, at *6; *see also Bryant Woods Inn, Inc. v. Howard Cnty., Md.*, 124 F.3d 597, 605 (4th Cir. 1997).

Here, Plaintiff has provided evidence of necessity in the form of his personal opinion, NP Sonchik's signing of the accommodation request form and acknowledgement that woodworking in the garage provides a "mental benefit," and Plaintiff's wife Maria Corella's testimony that working in the garage helps Plaintiff manage his symptoms. (*See* Docs. 106; 50-1 at 21–22; 118 at 7). While NP Sonchik signed the accommodation request form that Plaintiff prepared, which included a checked box certifying that the garage door exception was necessary, her records and hearing testimony did not clearly affirm that but-for Plaintiff's ability to woodwork or engage in other activities with his garage door open, Plaintiff will be unable to enjoy his housing on equal terms with non-disabled neighbors. (*See* Docs. 50-1 at 21–22; 97 at 4; 118 at 33). Plaintiff's other evidence largely relies on his own subjective opinion that the accommodation is necessary and that no alternative therapeutic methods provide sufficient relief. The Court recognizes that Plaintiff likely is best positioned to know the beneficial effect working in his garage with the door open has on his PTSD, as Plaintiff argued at the September 26, 2024 hearing. (Doc. 118 at 83–84). However, Plaintiff's evidence falls short of that found sufficient to prove the necessity of an accommodation in other cases. The Court finds that Plaintiff has not met his burden to clearly establish a likelihood of success, but that he has posed a serious question to the merits of his FHA claim.

### C. Irreparable Harm

A plaintiff seeking a preliminary injunction must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter*, 555 U.S. at 22; *Boardman v. Pac.*

*Seafood Grp.*, 822 F.3d 1011, 1023 (9th Cir. 2016) ("A threat of irreparable harm is sufficiently immediate to warrant preliminary injunctive relief if the plaintiff 'is likely to suffer irreparable harm before a decision on the merits can be rendered.'" (quoting *Winter*, 555 U.S. at 22)).  Irreparable harm is harm "that cannot be redressed by a legal or equitable remedy following trial." *Premier Nutrition, Inc. v. Organic Food Bar, Inc.*, 475 F. Supp. 2d 995, 1007 (C.D. Cal. 2007) (citation omitted). The Ninth Circuit has held that delay in seeking a preliminary injunction is a factor to consider in evaluating irreparable injury. *Arc of Cal. v. Douglas*, 757 F.3d 975, 990 (9th Cir. 2014). A plaintiff's "long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm." *Oakland Trib., Inc. v. Chron. Pub. Co*., 762 F.2d 1374, 1377 (9th Cir. 1985). However, the Ninth Circuit has held that delay alone is not dispositive "in the context of ongoing, worsening injuries." *Douglas*, 757 F.3d at 990.

In the present case, Plaintiff moves for a Preliminary Injunction nearly 17 months after filing his initial Complaint. Plaintiff argues that absent an injunction, he will suffer irreparable harm because he "will continue to suffer, and his mental health will continue to deteriorate." (Doc. 87 at 8). Additionally, Plaintiff states that he is currently unable to engage in his most effective alternative form of relief, scuba diving. (*Id.*) However, Plaintiff also indicated in his Reply and confirmed at the Preliminary Injunction Hearing that he has been back in Arizona—with limited opportunities to scuba dive—for nearly a year. (Docs. 104 at 6; 117 at 87; 118 at 101). Defendant argues an injunction is not warranted due to Plaintiff's delay in seeking a preliminary injunction while living in accordance with the closed garage door rule for 18 months and Plaintiff's failure to explain why injunctive relief is only necessary and appropriate now. (Doc. 97 at 14). Defendant also notes that Plaintiff has not presented documentary evidence, such as medical records or opinions, articulating how Plaintiff's mental health will suffer irreparable harm. (*Id.* at 15).

In the Motion's briefings, Plaintiff did not provide an explanation for the delay in seeking a preliminary injunction, but he did note that following the denial of his requested

9

accommodation "he worked with his counsel to develop his case against the association, so that he could prevail at a preliminary injunction hearing." (Doc. 104 at 6). At the Preliminary Injunction hearing, Plaintiff argued that the delay was due to Plaintiff's trip to Bali—from which he returned a year ago—and his attempts to implement other, ultimately unsuccessful therapeutic strategies in the meantime. (Doc. 118 at 82). The Court finds that this is not a compelling justification for the delay. That Plaintiff was able to withstand the harm from a lack of accommodation for such a significant length of time indicates that the harm is not of the immediate, irreparable consequence contemplated by preliminary injunctions. *See Donaghey v. Moorpark Bellingham Homeowners Ass'n, Inc*., No. 2:22-CV-08524-DSF-MAA, 2023 WL 9318509, at *9 (C.D. Cal. Nov. 29, 2023) (finding that plaintiff's one-year delay in seeking preliminary injunction after filing FHA accommodation complaint undercut claim of urgent irreparable harm). Moreover, Plaintiff failed to show that the harm he faces moving forward is new or significantly worsening as to require injunctive relief. Indeed, Plaintiff's counsel acknowledged at the Preliminary Injunction hearing on September 26, 2024 that there is no new harm and that Plaintiff will continue suffering the same harm. (Doc. 118 at 83); *see Oakland Trib., Inc*., 762 F.2d at 1377 ("Where no new harm is imminent, and where no compelling reason is apparent, the district court was not required to issue a preliminary injunction against a practice which has continued unchallenged for several years."). All told, the bar to receive a preliminary injunction is a high one, and the Court finds that Plaintiff has failed to establish a likelihood of immediate, irreparable harm.

### D.  Balance of Equities and Hardships

Plaintiff argues that there are no equities that tip in Defendant's favor because Defendant can enforce or not enforce the garage door rule at its discretion. (Doc. 87 at 9). Defendant argues that it is legally obligated to enforce the rules in its government documents. (Doc. 97 at 15). Under the Association's CC&Rs, the Board has discretion to enforce restrictions if a restriction is inconsistent with applicable law or if the Board "reasonably determines that the Association's position is not strong enough to justify

taking enforcement action." (Doc. 87 at 9 (citing Doc. 50-1 at 373, § 4.2)). As Defendant also has a legal obligation "to make reasonable accommodations in rules, policies, practices, or services" under the FHA, 42 U.S.C. § 3604(f)(3)(B), Defendant's obligation to enforce its rules and policies is outweighed by the obligation to abide by the FHA. *See generally United States v. Wagner*, 940 F. Supp. 972, 979 (N.D. Tex. 1996) ("Congress also stated that the FHA 'prohibit[s] the application of special requirements through . . . restrictive covenants . . . that have the effect of limiting the ability of [disabled persons] to live in the residence of their choice in the community.'" (alterations in original) (citing H.R. Rep. No. 711, 100th Cong., 2d Sess. 24, reprinted in 1988 U.S.C.C.A.N. 2173, 2185)).

Beyond Defendant's obligation to enforce its CC&Rs, Defendant argues that Plaintiff's activities disturb the quiet enjoyment and ambiance of the community. (Doc. 97 at 16). However, Defendant conceded that Plaintiff's accommodation does not impose any financial or administrative burdens. (Doc. 67 at 16 n.1). Additionally, Defendant conceded at the September 26, 2024 hearing that it has little hardship to the extent Plaintiff engages in quiet activities with his garage door open and does not have woodworking materials placed outside of the garage on his driveway. (Doc. 118 at 103).

Plaintiff has an obvious interest in obtaining his requested accommodation for his disability. If Plaintiff had established that an injunction was necessary to prevent irreparable harm, Plaintiff's interest would likely outweigh Defendant's interests under the balance of equities and hardships prong. However, because Plaintiff has not satisfied the irreparable harm element, the Court cannot find that "the balance of hardships tips sharply in the plaintiff's favor" as required to grant a preliminary injunction when Plaintiff only poses a serious question, rather than a likelihood, of success on the merits. *Short v. Brown*, 893 F.3d at 675.

**E.  Public Interest**

Courts have widely recognized the general public interest in enforcing fair housing laws. *See Johnson v. Macy*, 145 F.Supp.3d 907, 921 (C.D. Cal. 2015) ("[C]ourts have emphatically declared that the public interest is served by effective enforcement of the

FHA."); *Na''im v. Sophie's Arms Fine Residences, LLC*, No. 3:13-CV-02515-JAH, 2013 WL 8609251, at *2 (S.D. Cal. Nov. 18, 2013) ("[T]he public interest has been authoritatively declared by Congress in its enactment of 42 U.S.C. § 3601 et seq."). While the Court recognizes the public interest in upholding restrictive covenants of residential communities, the Court finds that public policy favors effective enforcement of fair housing laws. The public interest factor weighs in favor of Plaintiff.

## IV.   CONCLUSION

In sum, the Court finds that Plaintiff has failed to demonstrate that he is entitled to injunctive relief at this stage. While there is a question to the merits of Plaintiff's FHA claim, he failed to carry his burden of showing a likelihood of success on the merits. Moreover, Plaintiff did not make a clear showing of irreparable harm; indeed, his significant delay in seeking a preliminary injunction undercuts his claim that he faces immediate, irreparable harm. While the balance of equities and hardships and the public interest factors weigh in favor of enforcing a valid FHA claim, Plaintiff's failure to meet the first two *Winter* factors entails that a preliminary injunction is inappropriate. Having considered all of the evidence and the arguments of the parties, and having individually considered the *Winter* factors with respect to both claims for injunctive relief, the Court finds that Plaintiff is not entitled to a preliminary injunction.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Preliminary Injunction (Doc. 87) is **denied**.

Dated this 16th day of October, 2024.

Honorable Steven P. Logan
United States District Judge

12